UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER E. BARNETTE, | ) | Case No. 5:06 CV 0784 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | (Resolving ECF #62) |
| NICK DICELLO, et al., | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff, Walter E. Barnette in his third amended complaint claims that he is the inventor of a patented dust suppression guard used by defendants in the waterproofing business. He states that a patent was issued on December 16, 2006 and identified as U.S. Patent No. 6, 830,113 (the '113 patent). Mr. Barnette alleges that he understood that if he cooperated with the defendants' demands for assignment of the '113 patent to defendant Ohio State Home Services, his association with defendants would continue. Mr. Barnette further states that he did not realize the legal significance and ramifications of assigning the patent and did so without warning or opportunity to seek legal counsel and under duress and without sufficient consideration and that after assigning the patent his employment was terminated.

In the first count of the third amended complaint, Mr. Barnette alleges misrepresentation of material fact (fraud) in the assignment of the '113 patent. His second count, however, is an amalgam of allegations including: breach of duty of continued employment without sufficient notice, outplacement counseling or retraining or appropriate opportunities for transfer; that he is the sole inventor of the invention described in the '113 patent and that defendants Carl Moore and Sam

5:06 CV 0784                                                      2

Mazzo were listed as co-inventors when in fact they were not, but were part of the purpose or plan to deceive the patent office; that Mr. Barnette was subject to a confidentiality/non-competition agreement which prohibits his employment by a waterproofing company for two years; that defendants failed to notify or obtain Mr. Barnette's consent concerning certain specified matters in the patent application. These claims, constituting the second count, were purportedly brought under 35 U.S.C. §256. Mr. Barnette concludes the allegations in the second count stating that he requested the court to declare that he is the sole inventor and order the issuance of a certificate of correction with respect to inventorship. In his third count, Mr. Barnette claims that the defendants conspired against him by their inclusion of Sam Mazzo and Carl Moore as co-inventors, who were listed merely to be representatives for and protect the interests of Nick Dicello in violation of 35 U.S.C. §102(f). In his fourth count, Mr. Barnette alleges wrongful termination, misappropriation of ideas and theft of trade secrets in violation of the Uniform Trade Secrets Act. In his fifth count, it is alleged that defendants infringed the '113 patent willfully and deliberately and with conscious disregard of Mr. Barnette's rights under that patent. In his sixth count, it is alleged that defendants made false ownership claims in violation of the Lanham Act, 15 U.S.C. §1125(a), and in the seventh count, Mr. Barnette alleges that defendants made false and misleading claims to mislead, confuse or deceive potential customers to divert or interfere with Mr. Barnette's ownership claims, and patent rights, which resulted in unfair competition, false advertising and tortious interference with contract.

*Motion for Protective Order:*

5:06 CV 0784                                                                                      3

Defendants have moved for protective order (ECF #62) to prohibit the discovery sought by Mr. Barnette in his third request for discovery as well as for deposition. Defendants do not make specific objections to Mr. Barnette's discovery demands but oppose discovery essentially on the basis that this court lacks subject matter jurisdiction over the fifth count which asserts a claim for patent infringement. Defendants contend that because Mr. Barnette does not hold title to the '113 patent after its January 27, 2002 assignment to defendant Ohio State Home Services he has no standing to bring a patent infringement action. In support of this motion defendants cite *SKW America's vs. Euclid Chem. Co.*, 231 F.Supp.2d 625 (N.D. Ohio 2002), for the proposition that if the plaintiff does not own a valid legal title to a patent he does not have standing to bring suit and the court is without subject matter jurisdiction over the cause. This motion for protective order, in effect, is a jurisdictional challenge.

Plaintiff admits in the third amended complaint that he assigned legal title to the '113 patent, so he does not hold legal title. Defendants state that this flaw was pointed out to Mr. Barnette but his response to this issue in discovery was that "we are operating under the regime of notice pleadings." Defendants then notified Mr. Barnette that they would seek a protective order. (Motion for Protective Order, Ex. 5, 6, ECF #62). Defendants now argue that Fed. R. Civ. P. 26(c) permits them to apply for a protective order to avoid annoyance, harassment and undue burden and expense in complying with Mr. Barnette's discovery demands. Defendants' arguments were originally directed toward Mr. Barnette's fifth count alleging infringement of the '113 patent and their contention that there is not sufficient title behind Mr. Barnette's claims of infringement. However, during briefing the issue of Mr. Barnette's standing under 35 U.S.C. §256 arose. Defendants state

5:06 CV 0784                                        4

that they never alleged that this court did not have jurisdiction under this statute, but that the third amended complaint fails to state a claim. (Defendants' Reply to Plaintiff's Rebuttal, ECF # 74).

***Subject Matter Jurisdiction:***

In essence this matter represents a Rule 12(b)(1) jurisdictional challenge. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be construed as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *cert. denied*, 544 U.S. 961 (2005); *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007). In instances of facial attack, similar safeguards exist as would be under the case of Rule 12(b)(6). See *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).[1] Defendants' motion can be viewed as a facial attack since the allegations in the third amended complaint concede assignment of the patent.

The principle that defendant relies on was announced in *Lowry v. Hert,* where the Sixth Circuit recognized that an action challenging the conveyance of patent did not state a claim of patent infringement. The rule set forward was: "that if the case is brought either to enforce or to set aside

---

[1] "A party seeking to invoke the jurisdiction of a federal court must prove that jurisdiction is proper. See *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir.1995), *cert. denied*, 516 U.S. 1071, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996); *Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc*., 723 F.2d 1173, 1177 (5th Cir.1984). In this case, the burden falls on plaintiff. The allegations of his complaint must be taken as true and all inferences drawn in his favor. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir.1995)*; Garcia v. United States*, 776 F.2d 116, 117 (5th Cir.1985). Dismissal is warranted only if those allegations, together with any undisputed facts and the court's resolution of disputed facts, establish that the district court lacks subject matter jurisdiction. See *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002); *Santerre v. Agip Petroleum Co.*, 45 F.Supp.2d 558, 565 (S.D.Tex.1999)(footnote omitted)."

*Cole v. Gummow,* 2003 WL 22455387, *1 (N.D. Tex.).

5:06 CV 0784                                                5

a contract, federal jurisdiction is not found in the mere fact that the contract relates to patents, while, if the suit is one for infringement of a patent, federal jurisdiction is not necessarily lacking either because the answer sets up, or because the complaint anticipates and avoids, a defense based on contract." *Id.*, 290 F. 876, 878 (6th Cir. 1923). In *Lowry* an assignment of patent was challenged as procured by fraud and coercion and without consideration. *Id.* The court found, "it is plain that there is no right to maintain such a case in a federal court unless there is diverse citizenship." *Id.* at 878.

This principle was further developed in *Automatic Products Corp. v. Wolverine Bumper & Specialty Co.*, which held that diversity of citizenship was unnecessary because there was federal jurisdiction over a claim alleging infringement by the plaintiff with sufficient title against the defendant who disputed title. *Id.*, 15 F.2d 745, 747 (6th Cir. 1926), *cert. denied*, 275 U.S. 565 (1927). As more recently phrased in *Combs v. Plugh, Inc.*, an action does not "arise under" federal patent laws as required for the district court to have subject matter jurisdiction under 35 U.S.C. §1338(a), where the infringement question could not be determined without first deciding a state law question over validity of admitted assignment. *Id.*, 681 F.2d 469, 470 (6th Cir. 1982).

In *Combs*, the plaintiff admitted assignment of the patent to defendant but maintained that the assignment was obtained by fraud. The court concluded that, "[t]he present case is not an infringement action brought by a person whose title is challenged . Combs admits that he transferred title. Therefore before Combs can state a claim for patent infringement, the Court must invoke its equity jurisdiction, void the assignment, and return title to him. Only after Combs obtains colorable

5:06 CV 0784                                          6

title, can the court determine if he is entitled to damages or an accounting on his alleged patent infringement claim." *Id.*, 681 F.2d at 471. Consequently, the court held that the patent infringement action brought by an assignor of the patent did not "arise under" federal patent law. *Combs*, 681 F.2d at 471.

This court notes that Mr. Barnette's allegations share certain similarities with that in *Harsco Corp. v. Zlotnicki*, a case brought under the court's diversity jurisdiction where an employee claimed duress in the assignment of a patent to the employer with expectations of continued employment. *Id.*, 779 F.2d 906, 907 n. 1 (3rd Cir. 1985). There the claim was considered a matter under state law and the jurisdiction existed due to diversity. There is however no diversity of citizenship in this matter. Consequently there is no jurisdiction over Mr. Barnette's fifth count of patent infringement since he admits that he assigned the patent.

Mr. Barnette counters that *SKW Americas* is distinguishable because in that case plaintiff was not contesting the validity of an assignment for improper inventorship. Mr. Barnette does raise a claim of correction of named inventor under 35 U.S.C. §256 in the second count (Third Amended Complaint §8). Defendants counter that Mr. Barnette does not dispute the fact that he never held legal title to the patent and that the mere fact that Mr. Barnette also seeks relief pursuant to 35 U.S.C. §256 does not entitle him to relief (Reply Brief p. 2-3, ECF #72). Although defendants have not fully developed this argument, it does appear to raise standing issues related to an inventor who was assigned his patent and later seeks to correct inventorship. The leading case on this issue, is cited by Mr. Barnette, *Chou v. University of Chicago*, reversed the lower court and stated its

5:06 CV 0784                                    7

disapproval of several other district court opinions including *E.I. Du Pont de Nemours & Co. v. Okuley*, 2000 WL 1911430 (S.D. Ohio 2000), which held that only an assignee of a patent has standing to challenge inventorship. *Chou*, 254 F.3d 1347, 1358 (Fed. Cir. 2001).[2] Mr. Barnette raises *Chou* to counter defendants' argument, but the Federal Circuit determined as a matter of first impression in *Chou*, "that parties with an economic stake in a patent's validity may be subject to a §256 suit." *Id.*, 254 F.3d at 1359.

*Chou* was an appeal from the district court's findings that : first, plaintiff lacked standing to seek correction of inventorship under §256 because the ownership rights to the patent were surrendered under the University's employment agreement; and, second, there were no reasonable grounds for declaratory judgment because there was no reasonable apprehension that another party with a right to bring an action under §256, would do so. See *Chou*, 254 F.3d at 1354, 1358, citing *Fina Oil & Chem. Co., v. Ewen,* 123 F.3d 1466, 1471, (Fed. Cir. 1997). The Federal Circuit found standing to sue existed under §256 obviating the need to address declaratory judgment jurisdiction.

For Mr. Barnette to meet the constitutional requirement for standing he must show that he, "suffered an injury-in-fact, that the injury is traceable to the conduct complained of and that the injury is redressable by a favorable decision." *Id.*, 254 F.3d at 1357, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-01, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The absolute rule set out by the district courts was rejected because the purpose of §256 is served when the punitive inventor

---

[2] On appeal following the Federal Circuit's decision in *Chou*, Okuley dropped his argument that §256 was applicable. See *E.I. Du Pont De Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003)

5:06 CV 0784                                                    8

has the "right to assert her interest both for her own benefit and in the public interest of assuring correct inventorship designation on patents." *Chou*, 254 F.3d at 1358.  Aside from this point, *Chou* is detrimental to Mr. Barnette.

Unlike the situation in *Chou*, Mr. Barnette has not made any allegation that he has a financial stake in being designated the inventor.  In *Chou* the plaintiff was able to show that faculty or student staff inventors were entitled to 25 percent of the gross royalties and up-front payments from licensing activities.  *Chou*, 254 F.3d at 1359.  This financial stake in being designated an inventor demonstrated an injury-in-fact traceable to the conduct complained of.  The other possibility was the stake in "reputational interest".  *Chou*, 254 F.3d at 1359.  While the decision in *Chou* did not consider this assertion "implausible" it did not decide the issue.  *Id.*[3]

Subsequent to *Chou*, reputational interest was asserted in *Cole v. Gummow*, but the Northern District of Texas rejected the argument pointing out, "Whatever the contours of such an interest may be, plaintiff has offered neither evidence nor argument to assist the court in answering this jurisdictional question.  Beyond his bald assertion that 'I have a reputational interest in inventor of

---

[3] "Chou argues that a reputational interest alone is enough to satisfy the requirements of Article III standing. That assertion is not implausible. After all, being considered an inventor of important subject matter is a mark of success in one's field, comparable to being an author of an important scientific paper. Pecuniary consequences may well flow from being designated as an inventor. However, we need not decide that issue because Chou has alleged a concrete financial interest in the patent, albeit an interest less than ownership."

*Chou v. University of Chicago,* 254 F.3d at 1359.

5:06 CV 0784                                                                 9

the '221 and 184 patents,' there is nothing in the record to support such a conclusion. Plaintiff's say-so is hardly sufficient to carry his burden of proof." *Id.*, 2003 WL 22455387 at *3 (N.D. Tex.).

Mr. Barnette has not shown standing to raise a §256 claim for correction of inventorship. In addition to the points raised in *Cole*, Mr. Barnette has not shown that such designation would even constitute a "mark in success in one's field" as contemplated in *Chou*, as an aspect of "reputational interest." See note 2. Consequently, returning to the original issue, defendants' motion for protective order, prohibiting the discovery sought by Mr. Barnette in his *Third* Request for Discovery as well as recently scheduled depositions, (ECF # 62), is granted.

    IT IS SO ORDERED.

                                                  s/James S. Gallas
                                         United States Magistrate Judge

Dated: November 9, 2007